UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

SCOTT DOUGHTY,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )      No.:   3:15-CV-102-TAV-HBG
                                        )
TENNESSEE DEPARTMENT OF                 )
CHILDREN'S SERVICES, *et al*.           )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION

This civil matter is before the Court on the motion to dismiss by defendants

Tennessee Department of Children Services ("TDCS"), TDCS caseworker Bailee Welch,

TDCS Supervisor Christy Bledsoe, TDCS Supervisor Shannon Forrester, TDCS Chief

Legal Counsel Douglas Diamond, and TDCS Counsel Brandon Pelizzari (collectively

"defendants") [Docs. 14].  To date, plaintiff has yet to file a response in opposition to

dismissal and his time in which to do so has passed.  E.D. Tenn. L.R. 7.1, 7.2.  For the

reasons that follow, the Court will grant defendants' motion to dismiss.

## I.      Background[1]

Around 11:15 a.m. on March 6, 2014, plaintiff received a call from Welch—a

caseworker employed by TDCS—informing him that a "serious problem" necessitated

---

[1] For the purposes of the Motions to Dismiss, the Court takes plaintiff's factual
allegations as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on
a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in
the complaint" (citations omitted)).

that an emergency meeting be held at TDCS's London County Office that afternoon [Doc. 2 ¶¶ 11, 14]. Without expounding on the nature of the problem, Welch informed plaintiff that she had taken custody of his son and plaintiff's ongoing custody of the minor would be discussed at the meeting [*Id.* ¶¶ 15, 19].

Later that same afternoon, Welch informed everyone attending the 2:30 p.m. emergency meeting—including TDCS supervisor Bledsoe, TDCS supervisor Forrester and TDCS counsel Pelizzari—that the minor was claiming that his father "was bi-polar, violent, and . . . had not been taking his medication" [*Id.* ¶¶ 20–23]. She went on to explain that the minor indicated that plaintiff had "thrown him across the room and punched him in the stomach" [*Id.* ¶ 23]. Prompted for a timeline, the minor suggested the incident took place "a year or so ago," but could not say for sure [*Id.* ¶ 24]. In light of these allegations, Welch informed plaintiff that TDCS would retain custody and the minor would "not be going home with [plaintiff that] afternoon" [*Id.* ¶¶ 26, 27].

At some point after the foregoing exchange TDCS brought plaintiff's son into the meeting, at which point the minor communicated a desire to stay with Whitney Teffeteller—plaintiff's ex-wife and mother of the minor's step-sister [*Id.* ¶¶ 28–31]. Both plaintiff and the minor's biological mother objected, noting that Teffeteller was "of no biological relation to [their son], and rarely ever laid eyes on [him]" [*Id.* ¶ 32]. Both Welch and Pelizzari were present for the objection [*Id.* ¶ 33]. Plaintiff claims the group discussed Mary Pat Gettlefinger—the mother of the minor's best friend—as a potential

recipient of protective custody [*Id.* ¶¶ 38–40]. While plaintiff acknowledges that he signed an "Immediate Protection Agreement ("IPA") [Doc. 14-1],[2] and thereby consented to TDCS's placement of the minor "with [a] family member" for a "calm down period" [Doc. 2 ¶ 35], he appears to argue that everyone "agreed" Gettlefinger, not Teffeteller, would assume custody of the minor as a result of that document [*Id.* ¶¶ 39–40].

A protective custody hearing was held the following day, March 7, 2014, at the Loudon County Juvenile Court [*Id.* ¶¶ 35–36]. At that hearing, Welch and Pelizzari submitted a petition with allegations of dependency and neglect [*Id.* ¶ 37]. The petition identified Teffeteller as the proper recipient of "temporary custody" [*Id.* ¶ 35]. Forrester testified that the placement was due in part to the fact that the minor had informed TDCS that he would "run-away" if he were "made to go with anyone" else [*Id.* ¶ 37]. Based on the petition, recommendation of TDCS, and conclusion that delay would pose an immediate threat to the minor's health and safety, the Loudon County Juvenile Court

---

[2] An IPA permits parties to agree to a placement of a child without undergoing the drastic step of removal of the child into state's custody. These agreements must be entered into between the Department and the custodial parent(s) and are often used to place the child with a relative rather than a foster home. *See, e.g.*, *In re Jaden W.*, No. E2014-00388-COA-R3-PT, 2014 WL 7366683, at *1–2 (Tenn. Ct. App. Dec. 26, 2014); *In re J.C.H.*, No. W2012-01287-COA-R2-PT, 2012 WL 6466631, at *1–2 (Tenn. Ct. App. Dec. 14, 2012).

While matters outside the pleadings are generally not considered when ruling on a Rule 12(b)(1) or 12(b)(6) motion, the Court is permitted to consider certain pertinent documents as "'part of the pleadings'" when the documents are attached to the motion to dismiss, referred to in the plaintiff's complaint, and central to claim. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* Here, plaintiff references the IPA in his Complaint [Doc. 2 ¶ 34; Doc. 14-1].

granted temporary protective custody to Teffeteller until a full custody hearing could be held several days later on March 11, 2014 [Doc. 14-2].

During the three or so months between the custody hearing and Welch's departure from her position with TDCS, plaintiff suggests that Welch committed numerous errors, including: failure to record an address where Teffeteller and the minor could be reached, failure to perform monthly TDCS in-home visits, and failure to arrange visitation between plaintiff and his son [Doc. 2 ¶¶ 46–49, 52, 54]. As a result of the alleged events and the proximity of those events to the untimely death of his thirteen-year-old daughter on February 27, 2014 [*Id.* ¶¶ 1–3, 42, 43], plaintiff claims to have suffered severe depression and Post Traumatic Stress Disorder (PTSD) [*Id.* ¶ 49].

Plaintiff filed the current § 1983 action on March 9, 2015, claiming actions of the named defendants throughout the foregoing course of events violated his equal protection, substantive due process, and procedural due process rights under the Fourteenth Amendment [*Id.*].[3] He seeks compensatory damages for the alleged injuries in the amount of $100,000 and $10,000,000 in punitive damages [*Id.*]. Defendants move to dismiss the complaint for lack of subject matter jurisdiction as to certain defendants and failure to state a claim as to others [Doc. 14].

---

[3] Plaintiff describes his action as one under "§ 1983 for violation of . . . due process and equal protection under the law secured by the United States Constitution or by federal law guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments" [Doc. 2]. Plaintiff fails, however, to mention the First, Fourth, or Fifth Amendments beyond that point. These are precisely the type of "[t]hreadbare recitals of elements" insufficient to plead a claim under *Ashcroft v. Iqbal*. 556 U.S. 662, 678 (2009). As such, the Court interprets plaintiff's action as one for due process and equal protection violations in the Fourteenth Amendment context alone.

4

## II. ANALYSIS

### A. Lack of Subject Matter Jurisdiction[4]

Defendants argue that plaintiff's claims against TDCS and its employees—Welch, Bledsoe, Forrester, Diamond, and Pelizzari—in their official capacities should be dismissed for want of subject matter jurisdiction [Doc. 14 p. 1; Doc. 15 pp. 4–6]. Noting plaintiff is a citizen of the United States and TDCS is an arm of a constituent state, defendants argue that the Eleventh Amendment precludes this Court from entertaining an action by the former against the latter for money damages [Doc. 15 pp. 4–5 (explaining Eleventh Amendment issues are "jurisdictional" and Tennessee's immunity extends to its "agents and . . . instrumentalities")]. They go on to argue that plaintiff's official capacity claims are similarly barred based on the fact that official capacity claims against employees of a state are in essence actions against the state itself [*Id.*].

### 1. Standard

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Therefore, subject matter jurisdiction is a threshold issue, which the Court must consider prior to reaching the merits of a case.

---

[4] The Sixth Circuit recently made clear that the Eleventh Amendment operates as a jurisdictional bar. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("[W]e hold that rather than an affirmative defense, the Eleventh Amendment is a true jurisdictional bar that courts can—but are not required to—raise sua sponte at any stage in litigation, and, once raised as a jurisdictional defect, must be decided before the merits."). As such, defendants properly identified Rule 12(b)(1) as the vehicle for mounting an Eleventh Amendment challenge to the plaintiff's TDCS and official capacity claims. *See Lee v. Knox Cty. Sheriff's Office*, No. 3:05-cv-571, 2006 WL 1075204, at *2 (E.D. Tenn. Apr. 21, 2006).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also* Fed. R. Civ. P. 12(h)(3) (stating "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"). Unlike a motion to dismiss on the merits under Rule 12(b)(6), "where subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986) (internal quotation marks omitted)).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A facial attack is a challenge to the sufficiency of the pleading itself." *Id.* In considering whether jurisdiction has been established on the face of the pleading, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of the subject matter jurisdiction." *Id.* In considering whether jurisdiction has been proved as a matter of fact, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted). "[N]o presumptive truthfulness applies to the factual allegations, and

6

the court is free to weigh the evidence and satisfy itself as to the existence of tis power to hear the case." *Ritchie*, 15 F.3d at 598 (citation omitted).

Because an Eleventh Amendment argument constitutes a facial attack, factual allegations contained the complaint are entitled to a presumption of correctness. *Lee v. Knox Cty. Sheriff's Office*, No. 3:05-cv-571, 2006 WL 1075204, at *2 (E.D. Tenn. Apr. 21, 2005) (citing *Uttila v. City of Memphis*, 40 F. Supp. 2d 968, 970 (W.D. Tenn. 1999)).

## 2. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity, which is neither derived from nor limited by the terms of the Eleventh Amendment, *Alden v. Maine*, 527 U.S. 706, 713 (1999), prevents courts from entertaining actions brought against the State by its own citizens without consent of the state, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). In other words, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

The foregoing protections extend beyond the state itself to "certain actions against state agents and state instrumentalities." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *see also Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) (finding that the "Tennessee Department of Children's Services . . . [is] 'the State'" for purposes of

7

sovereign immunity). As a state agency, TDCS is shielded from suit by Eleventh Amendment immunity. *See Standridge v. Dep't of Children's Servs.*, No. 3:08-cv-133, 2009 WL 348782, at *5 (E.D. Tenn. Feb. 10, 2009). Further, official-capacity suits against government employees are treated as suits against the government employer itself. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Because the official-capacity claims against Welch, Bledsoe, Forrester, Diamond, and Pelizzari—all employees of TDCS—are in essence suits against TDCS itself—an "arm of the state" entitled to Eleventh Amendment immunity—they too are barred. *See, e.g.*, *Regents of Univ. of Cal.*, 519 U.S. at 429 ("When [an] action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.").

While several exceptions to Eleventh Amendment immunity exist—consent to the suit, *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008), congressional abrogation of the state's immunity in legislation pursuant to its powers under the Fourteenth Amendment, *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002), and suits for purely injunctive relief, *Brunner*, 548 F.3d at 474 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)—none apply in the current case. The Tennessee General Assembly has not waived the State's immunity to suit under § 1983, Tenn. Code Ann. § 20-12-102, the Supreme Court has made clear that § 1983 does not abrogated the state's Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the

8

complaint seeks exclusively monetary relief [Doc. 2]. Accordingly, plaintiff's claims against TDCS and Welch, Bledsoe, Forrester, Diamond, and Pelizzari in their official capacities will be dismissed.[5]

## B. Failure to State a Claim

In addition to the foregoing TDCS and official capacity claims, the complaint names Welch, Bledsoe, Forrester, Diamond, and Pelizzari in their individual capacities. Defendants request Rule 12(b)(6) dismissal based on absolute immunity, absence of a cognizable constitutional injury, and qualified immunity [Doc. 14; Doc. 15 pp. 6–12].

### 1. Standard

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal standard, S*mith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47

---

[5] The Court notes that Plaintiff's TDCS and official-capacity claims are alternatively subject to dismissal pursuant Rule 12(b)(6) due to the fact that neither TDCS nor its employees in their official capacity are "persons" cognizable by § 1983. Section 1983 provides that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983 (emphasis added). Neither states nor their instrumentalities constitute "persons" within the meaning of the foregoing provision. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989) (explaining that sovereign immunity precludes non-consenting states from constituting suitable "persons" under § 1983); *Standridge*, 2009 WL 348782, at *5 (concluding TDCS, as an arm of the State, is precluded from falling within the definition of "persons" subject to suit under § 1983); *see also Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 356 (1990) (noting no entity with Eleventh Amendment Immunity is a "person" for purposes of § 1983).

(1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," neither will "'naked assertion[s]' devoid of 'further factual enhancement[,]'" nor "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

Unlike Rule 12(b)(1), motions to dismiss pursuant to Rule 12(b)(6) are uniformly directed at the complaint itself. When faced with such a motion, courts must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

*Pro se* litigants "are held to less stringent [pleading] standards than . . . lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); s*ee also Haines*

10

*v. Kerner*, 404 U.S. 519, 520 (1972). Yet, this Court's "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Neither [this] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). For instance, federal pleading standards do not permit *pro se* litigants to proceed on pleadings that are not readily comprehensible. *Cf. Becker v. Ohio State Legal Servs. Ass'n*, 19 F. App'x 321, 322 (6th Cir. 2001) (upholding a dismissal of a *pro se* complaint containing "vague and conclusory allegations unsupported by material facts.").

In order to state a claim under § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

### 2. Fourteenth Amendment Equal-Protection Claims

The Fourteenth Amendment prohibits each state from "deny[ing] any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all similarly situated individuals should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). One effect of the clause is to prevent government discrimination "burden[ing] a fundamental right,

11

target[ing] a suspect class, or intentionally treat[ing] one differently than others similarly situated without a rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011).

Because conclusory allegations of unconstitutional conduct are insufficient to state an equal-protection claim, a viable complaint must include a "factual basis for [the] claim[]." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (citing *Place v. Shepherd*, 446 F.2d 1239 (6th Cir.1971)). Absent from the complaint is any allegation of membership in a suspect class or treatment differing from that afforded to similarly situated individuals. As such, the complaint fails to articulate a violation of the Equal Protection Clause. *See Trotter v. DeWeerd*, No. 1:12-CV-575, 2012 WL 4794628, at *3 (W.D. Mich. Oct. 9, 2012) ("Plaintiff does not allege that he was treated differently from others who were similarly-situated. Accordingly, she fails to state an equal protection claim."). Plaintiff's Fourteenth Amendment equal-protection claims will be dismissed.

### 3.    Fourteenth Amendment Due Process Claims

#### a.    Diamond and Pelizzari

Plaintiff alleges that Pelizzari "introduced himself as legal counsel for [TDCS]," [Doc. 2 ¶ 22], was "present and seated in the [March 6, 2014, meeting] and . . . overhear[d]" plaintiff object to custodial placement with Teffeteller by informing everyone present Teffeteller was plaintiff's ex-wife of twenty-three years and of no blood relation to the minor [*Id.* ¶¶ 32, 33]. Despite this knowledge, Pelizzari listed Teffeteller as an "extended family member" in the dependency petition filed with the Loudon

County Juvenile Court [*Id.* ¶¶ 35, 51, 55]. The only allegation against Diamond is that he authored a TDCS press release in October of 2013 noting changes in Sixth Circuit case law precluding "caseworkers [from] remov[ing] a child from [the custodial] home [without] a full . . . court hearing" [*Id.* (acknowledging that Diamond went on to note that an exception existed where "exigent circumstances" required immediate removal)].

The individual capacity claims against Pelizzari and Diamond lack factual allegations sufficient to establish that either defendant "deprived" plaintiff of the identified constitutional entitlement—familial integrity and custodial authority over his son. To the extent that Welch's retrieval of the minor from Lenoir City High School constituted a cognizable deprivation of custodial control, neither Pelizzari's presence at the emergency meeting nor Diamond's four-month-old press release provide a basis for imputing those individuals with legal responsibility for Welch's conduct. *See e.g., Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) (rejecting individual capacity claim in the absence of any evidence that the defendant was involved in constitutional deprivation); *Warren v. Shelby Cty.*, 191 F. Supp. 2d 980, 983 (6th Cir. 2001) (dismissing claim pursuant to Rule 12(b)(6) where the plaintiff failed to plead facts indicating direct involvement of defendant in alleged constitutional deprivation).

Further, the Loudon County Juvenile Court is the only entity, as the final decision-maker and via its March 7, 2014 protective order, that operated to deprive Plaintiff of his custodial control. *Barber v. Miller*, 809 F.3d 840, 848 (6th Cir. 2015); *see also Pittman v. Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (dismissing

13

claim against social worker because "to the extent that [court order operated] a deprivation of [the parent's] fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by [social worker]"). "Because the juvenile court has the ultimate decision-making power with respect to placement and custody, it alone could deprive [plaintiff] of his fundamental right." *Pittman*, 640 F.3d at 729; *see also Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586 (6th Cir. 2013) (rejecting claim because "[d]espite the alleged misrepresentations, the court was the final decision-maker").

In addition, the suggestion that Pelizzari mischaracterized Teffeteller's familial connection in the dependency and neglect petition fails to state a viable claim for relief because Pelizzari is entitled to absolute immunity for conduct associated with the petition's preparation. In the absence of a total lack of jurisdiction, a judge is entitled to absolute immunity for all actions taken in his or her judicial capacity. *Mireless v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). A similar immunity protects non-judicial officers— prosecutors, for example—performing "quasi-judicial" duties from being held liable for tasks integral or intertwined with the judicial process. *Joseph v. Patterson*, 795 F.2d 549, 560 (6th Cir. 1986). Social service employees are protected for conduct associated with the initiation of neglect proceedings in state court on behalf of a child. *See Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir. 1984) (reasoning that state employees and officials who are responsible for the initiation of petitions in state courts "to protect the health and well-being of the children . . . must be able to perform the . . . task . . . without

14

the worry of intimidation and harassment from dissatisfied parents"). "[C]ourts will bar §

1983 suits arising out of even unquestionably illegal and improper conduct by the

prosecutor so long as the general nature of the action in question is part of the normal

duties of a prosecutor." *Cady v. Arenac Cty.*, 574 F.3d 334, 340 (6th Cir. 2009); *see also*

*Pepper v. Alexander*, 599 F. Supp. 523, 526 (D.N.M. 1984) (finding social workers

absolutely immune from damage liability under for their decision to file petition for

termination of parental rights and participation in proceeding). Accordingly, the

individual capacity claims against Diamond and Pelizzari will be dismissed.

### b.      Welch, Bledsoe, and Forrester

Plaintiff's only allegations concerning Bledsoe and Forrester are that both

individuals attended the emergency meeting and that Forrester testified at the protective

custody hearing that TDCS's selection of Teffeteller as the recipient of temporary

custody was based on the minor's threat to "run-away" if placed with anyone else.

Neither allegation identifies the deprivation of a right cognizable under § 1983. *See, e.g.*,

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978) (noting whether a right secured

by the Constitution and the laws of the United States has been deprived and whether the

named defendants were responsible for that deprivation are separate questions).

Forrester's testimony in support of the petition is alternatively protected by absolute

immunity. *See, e.g.*, *Salyer v. Patrick*, 874 F.2d 374, 377–78 (6th Cir. 1989) (finding

social workers "bringing the child before the juvenile court" and "testifying on behalf of

the child's interest" fell within the scope of conduct covered by absolute "quasi-judicial"

15

immunity). Accordingly, the individual capacity claims against Bledsoe and Forrester will be dismissed.

The factual assertions concerning Welch are more extensive. Plaintiff alleges Welch personally retrieved the minor from Lenoir City High School before obtaining parental consent or court-ordered authority to do so, assisted in preparation of the neglect petition, and abandoned her duties as a caseworker by failing to record the address where she left the minor, arrange parental visitation, or conduct periodic checks on the minor's well-being. Defendants respond by arguing that each of the foregoing allegations are subject to Rule 12(b)(6) dismissal based on either Welch's entitlement to absolute immunity [Doc. 14 p. 2; Doc. 15 pp. 6–9], the existence of exigent circumstances justifying removal without custodial hearing [Doc. 14 p. 2; Doc. 15 pp. 9–11], or, in alternative, Welch's entitlement to qualified immunity [Doc. 14 p. 2; Doc. 15 pp. 11–12].

Welch, similar to Forrester and Pelizzari, is entitled to absolute immunity for actions taken in support of the dependency and neglect petition. As such, her contribution to drafting the petition cannot serve as a basis for imposing liability. Absolute immunity, however, does not provide a basis for dismissing the remainder of plaintiff's claims against Welch because the doctrine only covers conduct taken in her capacity "as a legal advocate[]—initiating court actions [and] testifying under oath—[and does] not" extend to "administrative, investigative, or other functions." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 724 F.3d 687, 694 (6th Cir. 2013); *see also Millspaugh v. Cty. Dep't of Public Welfare*, 937 F.2d 1172, 1176 (7th Cir. 1991)

16

("Sallying forth to collect the child is no different from seizing evidence on the authority of a warrant, which again is covered by qualified immunity only.").

Welch's post-deprivation conduct—abandonment of her duties as a TDCS caseworker by failing to record the address where she left the minor, arrange parental visitation, or conduct periodic checks on the minor's well-being—is likewise incapable of supporting a viable claim. Failure to record Teffeteller's address or perform periodic checks after Teffeteller received temporary custody is at most negligent conduct and thus cannot serve as the basis for imposing liability under § 1983. *See, e.g.*, *Ingrao v. Cty. of Albany*, No. 1:01-cv-730, 2007 WL 1232225, at *18–19 (N.D.N.Y. Apr. 26, 2007) ("While a fact finder might conclude that Flynn was negligent in carrying out her caseworker duties, negligence is insufficient to support a [§] 1983 claim."). Further, the absence of an allegation that the Loudon County Juvenile Court awarded plaintiff visitation rights precludes failure to arrange the same from rising to the level of a cognizable constitutional deprivation. *See, e.g.*, *Scarso v. Cuyahoga Cty. Dep't of Human Servs.*, 747 F. Supp. 381, 384–85 (N.D. Ohio 1989) (rejecting claim based on denial of "physical possession" where the complaint lacked any allegation that the parent was entitled to legal custody or rights of visitation at the time).

By contrast, the alleged interference with plaintiff's custodial authority implicates both procedural and substantive due process. *Doe v. Staples*, 706 F.2d 985, 988 (6th Cir. 1983) (explaining that interference with custodial authority infringes on a parent's interest in familial integrity, a fundamental right); *see also Kottmyer v. Maas*, 436 F.3d

17

684, 691 (6th Cir. 2006) ("[T]he constitution guarantees 'that parents will not be separated from their children without due process of law.'" (quoting *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1107 (9th Cir. 2001))). The procedural component usually requires that the government provide a parent with "notice prior to the removal of [his or her] child [and] a full opportunity . . . to present witnesses and evidence [in opposition to that removal]." *Kovacic*, 724 F.3d at 700. However, an exception exists where exigent circumstances—the threat of imminent or ongoing physical abuse in the home—require swifter government action. *Id.* at 695 (quoting *United States v. Rohrig*, 98 F.3d 1506, 1517 (6th Cir. 1996)). The strictures of procedural due process are satisfied in the latter category of cases by affording parents a prompt post-deprivation custody hearing. *See Staples*, 706 F.2d at 990 (allowing for a post-deprivation hearing in the face of exigent circumstances).

The Fourteenth Amendment's substantive component prohibits any government interference with the fundamental right to familial integrity in a manner that "shocks-the-conscience," irrespective of the sufficiency of the procedure afforded. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (explaining that the "shocks-the-conscience" test governs all substantive due process claims based on executive action); *Ferguson v. Van Horne*, 5:09-cv-2055, 2011 WL 251116, at *6 (N.D. Ohio Jan. 26, 2011) ("When, as in the present case, a plaintiff complains of abusive executive action, this 'conscience shocking' test determines liability, rather than the traditional strict scrutiny standard used to measure the constitutionality of legislative acts.").

18

Welch's conduct does not constitute the kind of "conscious shocking" behavior required to support a substantive due process violation. *See, e.g.*, *Tenenbaum v. Williams*, 193 F.3d 581, 599 (2nd Cir. 1999) (holding removal of child for several hours without any judicial proceedings did not constitute a violation of parent's substantive due process rights); *J.B. v. Washington Cty.*, 127 F.3d 919, 927–28 (10th Cir. 1997) (rejecting substantive due process claim in absence of allegation that officials were motivated by purpose apart from investigation into the child's safety); *T.C. v. Mattingly*, No. 70-cv-1790, 2010 WL 3824119, at *10 (E.D.N.Y. Sept. 23, 2010) (holding four-day removal did not rise to the level of a substantive due process violation where undertaken for purpose of keeping child safe until court confirmation of removal). Absent conscious shocking conduct, the remaining substantive due process claim fails as a matter of law.

As support for their argument that the complaint fails to state a cognizable violation of procedural due process, defendants rely primarily on the fact that the minor informed TDCS that his father was "bi-polar, . . . violent, . . . not taking his medication" and "had thrown [the minor] across the room and punched [the minor] in the stomach" a year earlier [Doc. 14 p. 2; Doc. 15 pp. 9–11]. They also point to the minor's threat to run away from home if made to stay with anyone other than Teffeteller [*Id.*]. Application of the doctrine of qualified immunity makes it unnecessary for the Court to determine whether or not these facts constitute exigent circumstances as a matter of law.

19

Once a defendant invokes qualified immunity, the plaintiff bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *Baker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Reviewing courts are free to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in a particular case." *Pearson*, 555 U.S. at 236. Because the Court concludes plaintiff's right was not clearly established, it declines to address whether the same amounted to a violation of procedural due process.[6]

"'For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Greene v. Barber*, 310 F.3d 889, 893 (6th Cir. 2002)). The determination must be made "in light of the specific context of the case, not as a broad general supposition," *Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)), and requires the Court look first to the decisions of the Supreme Court, then to decisions from the circuit in which it sits, and finally to decisions from other circuits.

---

[6] The current case is an appropriate one for only addressing the clearly established prong for two reasons. First, because the question of qualified immunity arises at the pleading stage, "'the parties have provided very few facts to define and limit any constitutional holding.'" *Pearson*, 555 U.S. at 238–39 (quoting *Robinette v. Jones*, 476 F.3d 585, 592 n.8 (8th Cir. 2007)). Second, plaintiff's failure to respond to the Motion to Dismiss means that the constitutional question lacks clarity and detail, posing a risk that the Court might decide the issue incorrectly. *Id.* at 239. The Court therefore confines its inquiry to the clearly established prong of the qualified immunity analysis.

The Court finds that the constitutional implications of retrieving the minor from school without first obtaining plaintiff's consent were not so clearly established in March of 2014 that a reasonable official in Welch's position would have understood that his or her conduct would violate the parent's right to notice and a pre-deprivation hearing.

The case closest to providing Welch with notice of the constitutional implications of her conduct is the Sixth Circuit's decision in *Kovacic v. Cuyahoga County Department of Children & Family Services*. 742 F.3d at 692–93. The case involved a mother's § 1983 claim against several social workers for their unconsented and warrantless removal of her children from the family home. *Id.* The mother alleged that the conduct violated her Fourteenth Amendment rights to procedural and substantive due process. *Id.* The Court rejected the defendants' argument in favor of qualified immunity for two reasons: the Sixth Circuit made clear long before the conduct that—absent an emergency—the Fourteenth Amendment required notice and hearing before removing a child; and no reasonable social worker could have concluded that a single weeks-old physical confrontation and unspecified escalating behavior justified removal of the daughters without first affording the parent with notice and a custodial hearing. *Id.* at 699.

*Kovacic* is distinguishable from the current case and thus fails to provide a basis for imputing Welch with notice of the constitutional implications of her conduct for two reasons. First, *Kovacic* "concerned warrantless entry by social workers into the [plaintiff's] home, a feature that triggers all manner of heightened privacy concerns." *Miller*, 809 F.3d at 845 (distinguishing *Kovacic* in the process of concluding Fourth and

Fourteenth Amendment implications of social workers interviewing the plaintiff's child at school were not clearly established). Second, no reasonable official presented with the facts of the current case—reports of a bi-polar father no longer taking his medication and exhibiting violent behavior, under the increased emotional strain of having lost his thirteen-year-old daughter two weeks earlier and known to have previously used violent force against the reporting minor—would have known that retrieving that minor from school before obtaining parental consent or court-ordered authorization would violate the parent's right to procedural due process. *See, e.g.*, *Bartell v. Lohiser*, 215 F.3d 550, 558 (6th Cir. 2000) (granting qualified immunity where reasonable person faced with same facts—prior involvement in abusive relationships, allegations of child abuse, suicide attempt, and ongoing emotional instability—would not have known that obtaining court-ordered termination of custodial rights without pre-termination hearing or notice would result in a violation of procedural due process). Because the doctrine of qualified immunity shields Welch from § 1983 liability, plaintiff's remaining procedural due process claim will be dismissed.

**C. Failure to Respond in Opposition to Dismissal**

As an alternative basis for dismissing plaintiff's complaint, the Court notes that it may properly dismiss a case for want of prosecution. *See, e.g.*, *Custom v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986); Fed. R. Civ. P. 41(b). It is similarly well established that a plaintiff's failure to respond or otherwise oppose a motion to dismiss operates as both a waiver of opposition to and an independent basis for granting the

unopposed motion. *See, e.g.*, *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013); *see also* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought").

More than three months have passed since defendants filed the instant Motion to Dismiss on January 6, 2016 [Doc. 14]. Plaintiff has yet to respond and, by way of such failure, is found to have waived opposition to dismissal of the complaint. *Ellison v. Knox Cty.*, No. 3:15-cv-126, 2016 WL 204472, at *13–14 (E.D. Tenn. Jan. 15, 2016); *Elmore v. Evans*, 449 F. Supp. 2, 3 (E.D. Tenn. 1976). As a result, the action will be dismissed.

III.    **Conclusion**

For these reasons, the Motion to Dismiss [Doc. 14] will be **GRANTED** and this case will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** the case.

**AN APPROPRIATE ORDER WILL ENTER.**


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE